### KNOX vs. WIDOW AND HEIRS OF DIXON.

APPEAL FROM THE COURT OF THE FIFTH DISTRICT, THE JUDGE OF THE DISTRICT PRESIDING.

The payee or first endorser on a bill or note is responsible to all the endorsers or parties who come after him, according to the *lex mercatoria.*

The *lex mercatoria* imposes on the endorser of accommodation paper, the obligation to pay every subsequent endorser or holder, in the same manner as in business paper.

And although the court can look beyond the form in which the parties clothe their contracts, yet without an express agreement to the contrary, it will be presumed to be their intention to be governed by the rules to which the form of the obligation is subjected.

The plaintiff sues for the recovery of a moiety of a note for five hundred dollars, which he had endorsed with James Dixon

in his lifetime, for Wm. Simons, to the Bank of Louisiana. Simons having failed to pay it, the Bank brought suit against the plaintiff, as the first endorser, and compelled him to pay the whole amount. He now claims of the defendants, as the heirs and legal representatives of Jas. Dixon, one moiety, as the amount he was bound for as co-endorser. The tenor of the original note is as follows:

WESTERN DIS.
*Sept.* 1832.

KNOX
*vs.*
DIXON'S HEIRS.

"$500.         Opelousas, 24th May, 1828."

"Twelve months after date, I promise to pay to Wm. G. Knox, or order, at the office of discount and deposite of the Bank of Louisiana at Opelousas, five hundred dollars; value received."        "WM. SIMONS."

"Credit the drawer."
   "W. G. K."
   "J. D."

      Endorsed on the back:

        "Wm. G. Knox."
        "Jas. Dixon"

The defendants denied their liability for any part of the note. That James Dixon endorsed it on the faith of the first endorser, and trusted to the solvency of the plaintiff as such, as his guarantee against the effects of his liability. That the plaintiff was payee and first endorser, and having paid, his recourse is against the drawer. That Dixon was not a surety of Simons on the note, but only the last endorser, and could not be held liable to any prior endorser.

It was proved by the cashier of the bank that the above note was discounted in bank as accommodation paper; and by Simons, that Knox endorsed the note first, but was told there would be another endorser. The endorsers put their names to the paper out of each other's presence, but both were on it when presented to the bank. There was judgement for the defendants.

*Bowen*, for the plaintiff.

*Lewis*, for defendants, distinguished this case from that of *Nolte et al.* vs. *their Creditors*, cited by the plaintiff's counsel.

The question there was as to the amount of damages the endorser of an accommodation note could recover from the drawer, and the court very properly decided that he should recover no more than he had paid. Here the question is very different. It is, how are the endorsers of a promissory note, discounted in bank for the benefit of the drawer, liable with respect to each other? He made the following points in argument:

I. This contract is mercantile in its nature, and must be governed by the *lex mercatorio.*

2. In such cases the first endorser is liable to the second, the second to the third, and so on. 5 *Mar. N. S.* 196. 6 *Ibid.* 517.

3. In order to take negotiable paper out of the law merchant, a clear case must be made out of the intention of the parties to that effect; and the words "credit the drawer," subscribed with the initials of the endorsers at the foot of the note, is not alone sufficient to take the case out of the ordinary rules of law governing such contracts. 7 *Mar. N. S.* 368.

PORTER, J., delivered the opinion of the court.

This is an action by the payee and endorser of an accommodation note, discounted at bank, to compel the subsequent endorser to contribute his equal or virile share of the amount of the obligation. The note was protested, and taken up and paid by the plaintiff.

Parole evidence, taken on the trial below, shows the plaintiff endorsed the note in question first. The maker, on procuring his endorsement, told him he should have another endorser. The ancestor of defendants endorsed out of the presence of the plaintiff, and was not informed the maker had promised the payee to procure another endorser.

The note was in the usual form. On the face of it the following memorandum is found: "Credit the drawer. W. G. K., J. D." These are the initials of the names of the two endorsers.

WESTERN DIS.
Sept. 1832.

KNOX
vs.
DIXON'S HEIRS.

The payee or first endorser on a bill or note is reponsible to all the endorsers or parties who come after him according to the *lex mercatoria.*

The case has been well argued, and the discussion at the bar has taken a wide range. It has been decided in this court in two cases, namely, that of *Bullard* vs. *Wilson* and *Stone* vs. *Vincent*, that the endorser of an accommodation note was responsible over to the endorsee, as he would be on any other paper. In the case of *Nolte & Co.* vs. *their Creditors*, where the rights of the payee against the maker of an instrument of this kind were examined; and in the case of *Dorsy & Co.* vs. *their Creditors*, where the subject was still more fully gone into, we expressly stated, "that as to all parties who came after the payee on the bill, the *lex mercatoria* applied in full force, and made him responsible under its rules." 5 *Martin, N. S.* 196. 6 *Ibid.* 518. 7 *Ibid.* 9, 498.

And although the court can look beyond the form in which the parties clothe their contract, yet without an express agreement to the contrary, it will be presumed to be their intention to be governed by the rules to which the form of the obligation is subjected.

There can be no doubt the court can look beyond the form into which the parties may have cast their contract. But what follows? Why, this: That unless an understanding is shown to take the case out of the obligations which the form given to the contract imposes, these obligations must be presumed to be within the intention of the parties, and that they engaged themselves accordingly. In the two cases last cited, which were in relation to accommodation paper, we were of opinion that the mercantile law did not, even where the contract assumed the form of a bill of exchange or a promissory note, enable the payee, or whoever may have lent his name to the maker or drawer, to recover from either more than he was compelled to pay. But as we intimated in these cases, as we had previously decided, and as we think now, the *lex mercatoria* imposes on the endorser of accommodation paper, the obligation to pay to every subsequent endorser or holder, in the same manner as in business paper. We refer again to the authority of Chancellor Kent and the authorities cited by him, both from English and American cases. "Accommodation paper (he says) is now governed by the same rules as other paper; this is the latest and best doctrine both of England and this country."

The *lex mercatoria* imposes on the endorser of accommodation paper the obligation to pay every subsequent endorser or holder, in the same manner as in business paper.

It cannot be made a question that endorsers to an accommodation note may take themselves out of this law, and by

WESTERN DIS.
Sept. 1832.

particular agreement make a law for themselves.   But unless they do, we know of no law which can regulate their contracts, but that which governs negotiable paper in general.   The principal question then, in this cause, is, whether the proof in this case shows the parties intended that their contract should be governed by other rules than those which the commercial law furnishes.   The evidence offered to that effect is the memorandum on the face of the note, by which both endorsers direct the amount to be credited to the maker.   This certainly furnishes some ground to infer that such might have been their intention.   But after the best consideration we can give to the subject, we do not think it sufficiently strong to destroy the obligation created by one of the parties endorsing before the other.

It is, therefore, ordered, adjudged, and decreed, that the judgement of the District Court be affirmed, with costs.